21 N.J. Super. 6 (1952)
90 A.2d 508
MARY CAPONE, ADMINISTRATRIX AD PROSEQUENDUM OF THE ESTATE OF HARRY CAPONE, DECEASED, PLAINTIFF-RESPONDENT,
v.
HENRY K. NORTON, TRUSTEE OF THE PROPERTY OF NEW YORK, SUSQUEHANNA & WESTERN RAILROAD COMPANY, A CORPORATION, DEFENDANT-APPELLANT. PETER PANEPINTO, ADMINISTRATOR AD PROSEQUENDUM OF THE ESTATE OF JEAN PANEPINTO, DECEASED, PLAINTIFF-RESPONDENT,
v.
HENRY K. NORTON, TRUSTEE, ETC., DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued July 7, 1952.
Decided July 11, 1952.
*8 Before Judges JAYNE, COLIE and GRIMSHAW.
Mr. Charles S. Barrett, Jr., argued the cause for appellant (Messrs. Lum, Fairlie & Foster, attorneys).
Mr. Louis Santorf argued the cause for respondents (Mr. John A. Masiello, attorney for respondent Capone; Mr. Benjamin P. Galanti, attorney for respondent Panepinto.
The opinion of the court was delivered PER CURIAM.
The mishap out of which this litigation arose was the occurrence on June 19, 1948, of a collision at a railroad grade crossing in the City of Paterson between a motor vehicle driven by the decedent Harry Capone, in which the decedent Jean Panepinto was a passenger, and a diesel engine operated by the New York, Susquehanna & Western Railroad Company. The occupants of the motor vehicle sustained bodily injuries from which they immediately died. We are here concerned with the actions of the administratrix ad prosequendum of the estate of Capone and of the like representative of the estate of Jean Panepinto thereafter instituted against the defendant and consolidated for trial. R.S. 2:47-1, et seq.
The first trial on March 2, 1950, resulted in verdicts in favor of both plaintiffs awarding damages of $28,000 in the Capone case and of $42,000 in the Panepinto action. In the consideration of the motions for a new trial, the court resolved that the damages awarded were excessive in each *9 case and granted the plaintiff in the Capone case the alternative of accepting damages in the sum of $24,000 and a similar alternative to the plaintiff in the Panepinto case of consenting to a reduction of the award to the sum of $34,000. The reductions were accepted and judgments in the reduced amounts were accordingly entered.
The defendant prosecuted appeals to the Appellate Division of this court and the judgments were reversed on the ground that the reduced awards in the light of the pertinent evidence were so excessive as to necessitate a new trial limited in each case to the single issue of damages. 11 N.J. Super. 189 (App. Div. 1951). The Supreme Court, upon certification, affirmed. 8 N.J. 54 (1951).
The two cases, so consolidated, again proceeded to trial in December, 1951, and verdicts eventuated awarding $25,000 to the plaintiff in the Capone case and $15,000 to the plaintiff in the Panepinto action. The defendant's motions for another trial were denied by the trial court. The present appeal encompasses the propriety of the orders denying a new trial and the existing judgments.
The predominantly controversial question presented is whether the verdicts or either of them is so excessive as irresistibly to give rise to the inference of mistake, passion, prejudice, or partiality, and by that standard deemed to be palpably against the weight of the evidence. Hager v. Weber, 7 N.J. 201 (1951).
It is recognized that the jury could only fairly and justly compensate the parents in each case for a deprivation of a reasonable expectation of a pecuniary advantage which would have resulted from a continuance of the life of the deceased. R.S. 2:47-5, now as am. N.J.S. 2A:31-5.
It was appropriately the primary function of the jury to say under all the circumstances disclosed by the evidence, taking into account all the uncertainties, contingencies, and reasonable probabilities of the particular case, whether there was such a well founded expectation of pecuniary benefit to the decedent's next-of-kin to be derived from a continuance *10 of the life of the decedent as could be estimated in money and so become a fair and just award of compensatory damages. Cooper v. Shore Electric Co., 63 N.J.L. 558, 567 (E. & A. 1899).
We therefore endeavor to reconcile, if possible, the verdicts in the present cases with the evidence and all reasonable inferences and probabilities which the jury might have drawn from any of the proofs. In cases of this nature in which a jury is permitted to envision from the basic evidence the probabilities of the unknown future, it is not free to make unrestrained and incommensurable awards.
Here both decedents were 27 years of age, unmarried, and indulging in a courtship which customarily leads to marriage. The paternal members of the families were not in such situations of dependency as urgently to induce contributions of pecuniary aid to them by the decedents. The parents of both owned their own homes. Capone's father was 72 years of age, his mother 66; he was also survived by six brothers and five sisters ranging in age from 32 to 49 years. Miss Panepinto's father was 52 and her mother 51 years of age. The income of neither decedent at the time of death or prior thereto was relatively large.
We have very cautiously scrutinized the evidence relating to damages allowable under the applicable statute. We have entertained a liberal forecast in the existing economic conditions of the probable prospective earning capacites of the respective decedents had they not prematurely died, and with the permissible but not controlling aid of annuity and mortality tables calculated the present value of the reasonably probable contributions of a pecuniary nature of which the parents of each have been deprived. We have observed "the current trend of judicial thought respecting the quantum of damages in comparable cases," and it seems to us clearly and convincingly to appear that the verdict in each action is so exorbitant in the circumstances of the particular case as to be indicative of the influences of either mistake or bias, prejudice and sympathy.
*11 The judgments under review are reversed. If the plaintiff in the Capone case will promptly consent in the appropriate manner to accept the sum of $15,000, a judgment in that amount may be entered against the defendant; otherwise a new trial of that action is directed, limited to the issue of damages only.
The plaintiff in the Panepinto case received on account of the alleged loss the sum of $3,000 from a joint tort feasor for which she must give credit. If this plaintiff will promptly consent to accept the sum of $7,500, a judgment in that sum may be entered against the defendant; otherwise a new trial of that action is ordered, limited to the issue of damages only.